[Cite as *State v. Gamble*, 2021-Ohio-1810.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                No. 109613

    v.                            :

ADOLPH N. GAMBLE,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 27, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-639438-A and CR-19-644752-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James Gallagher, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Adolph Gamble appeals from his indefinite, non-life felony sentence imposed under R.C. 2929.144.[1] For the following reasons, we affirm.

{¶ 2} Gamble was indicted on seven counts, including trafficking, drug possession, having weapons while under a disability, and possessing criminal tools. He ultimately pleaded guilty to one count of trafficking, a second-degree felony qualifying offense under R.C. 2929.144(A), with a one-year firearm specification, and one count of having weapons while under a disability, a felony of the third degree. The remaining counts were nolled by the state. Pursuant to S.B. 201, the Reagan Tokes Law, Gamble was sentenced to serve an indefinite, non-life sentence for a minimum of two years, and a maximum of three years — along with a mandatory, one-year term on the firearm specification. The resulting aggregate term of imprisonment is a minimum of three years and a maximum of four years.

{¶ 3} In this appeal, Gamble presents a single assignment of error in which he broadly claims that the Reagan Tokes Law violates the Constitutions of the United States and the state of Ohio. Since our review of the constitutional validity of laws is limited to the codified statutes, we must review the statutory language as enacted. Thus, according to Gamble, R.C. 2929.14 and 2929.144, which authorize an indefinite, minimum and maximum term of imprisonment for first- and second-

---

[1] Although Gamble's notice of appeal included two cases, CR-19-639438-A and CR-19-644752-A, he only appeals the sentence imposed in the latter. None of Gamble's arguments discussed any potential error in case No. CR-19-639438-A, and therefore, that conviction is affirmed. App.R. 16(A)(7).

degree qualifying felonies, as amended under the Reagan Tokes Law, violate his right to a jury trial because the Ohio Department of Rehabilitation and Correction ("ODRC") determines the length of his "extended" sentence based on its independent consideration of factors. Gamble further claims that through R.C. 2967.271, which creates a presumption in favor of Gamble being released upon serving the minimum part of the sentence unless the ODRC takes certain procedural steps to enforce the maximum prison term imposed in the final entry of conviction, the executive branch usurps the judicial authority to determine and impose sentences in violation of the separation-of-powers doctrine.

{¶ 4} There is an overarching issue that appears to permeate every aspect of the constitutional challenge against the statutory sections codified as part of the Reagan Tokes Law. Gamble's claims depend solely on his belief that the ODRC "extends" his prison term under R.C. 2967.271 by imposing an additional term of imprisonment beyond that which was imposed by the sentencing court. As will be discussed in further detail, R.C. 2929.144(B) provides that the sentencing court must determine the maximum term of imprisonment based on a mathematical formula as applied to the minimum term of imprisonment imposed under R.C. 2929.14(A)(1)(a) and (A)(2)(a). The sentencing court must then impose that maximum sentence as part of the final sentence under the unambiguous language of R.C. 2929.144(C) ("The court imposing a prison term on an offender [under R.C. 2929.14(A)] for a qualifying felony of the first or second degree shall sentence the offender, as part of the sentence, to the maximum prison term determined under

division (B) of this section" and impose both the minimum and maximum terms in the final entry of conviction.). Thus, Gamble's belief as to the structure of the imposed sentence is contrary to the plain language of the statute. The ODRC does not extend or impose any sentence.

{¶ 5} The trial court imposes the minimum and maximum terms of imprisonment under the unambiguous language of R.C. 2929.144 and 2929.14 (A)(1)(a) and (A)(2)(a). The ODRC simply enforces the sentence imposed and has been delegated the responsibility over the release determinations under R.C. 2967.271 similar to the executive branch's authority to release offenders from sentences under Ohio's parole system. R.C. 2967.12 and 2967.16. The question, therefore, is not whether Gamble's perception of his sentence infringes on Gamble's constitutional rights but whether the sentencing law as enacted does. As an intermediate court of review, we cannot lose sight of that.

**Ripeness**

{¶ 6} The state claims that Gamble's constitutional challenge of the statutory scheme codified under the Reagan Tokes Law is not ripe for review in a direct appeal from the final entry of conviction. However, if a defendant cannot challenge the constitutional validity of the sentence imposed in the final sentencing entry in his direct appeal, the question becomes when and how could the defendant advance that claim. In *State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, ¶ 18, it was recently concluded that the record in cases such as Gamble's is sufficiently developed to allow courts to fairly adjudicate the facial challenges

questioning the constitutional validity of the Reagan Tokes Law in general. We need not stray from that conclusion, but we also need not rest on *Wilburn* alone.

{¶ 7} First and foremost is the aforementioned misconception with respect to the newly enacted sentencing scheme in the Reagan Tokes Law that weighs on the ripeness issue. The ODRC does not extend or impose an additional sentence on the offender — under R.C. 2929.14 and 2929.144, the trial court imposes a maximum term of imprisonment and a minimum term that carries a presumption in favor of release. R.C. 2929.14(C). After the minimum term is served, the ODRC may, under certain conditions not necessary to review here, enforce the remainder of the term imposed by the sentencing court, but there remains a presumption of release that the ODRC must overcome. R.C. 2967.271(B). The executive branch is not extending the defendant's prison term or imposing its own sentence for violations that occur while the offender is serving the imposed term of imprisonment.

{¶ 8} The parallels between the indefinite non-life felony sentencing structure imposed under R.C. 2929.144 and the indefinite life felony sentences under R.C. 2929.02 are instructive. Under the sentencing structure enacted under the latter section, an offender is sentenced to a term of life with the possibility of parole after a set time period. After the minimum term is reached, the executive branch is tasked with reviewing the offender's status to release him on parole or from the sentence altogether. R.C. 2967.12; 2967.16. The executive branch is not considered to be decreasing the imposed sentence when granting an offender parole or extending the term of imprisonment when denying parole, as a violation of the

separation-of-powers doctrine. For that matter, the executive branch is not deemed to be interfering with the trial court's sentencing authority when releasing offenders from their sentences after successful completion of the terms of parole under R.C. 2967.16.

{¶ 9} R.C. 2929.144 simply flips the principle underlying parole, which essentially presumes enforcement of the life tail over release through parole, contrasted with non-life indefinite sentencing under the Reagan Tokes Law, which presumes a release after the minimum term. Under R.C. 2929.144, the trial court imposes a maximum term, three years in this case, with the presumption that the ODRC will release the offender from the sentence after two years, similar to the system enacted under R.C. 2967.16. Thus, the ODRC enforces the sentence imposed by the trial court, and its review is limited to determining the offender's release date — which is no different than the executive branch's determination of an offender's release date under the parole structure for indefinite life sentences. The ODRC's decision to release the offender under the provisions of the statute is no different than the decision to parole an offender serving a sentence under R.C. 2929.02; the executive agency is simply executing the sentence imposed and exercising the authority delegated to it to determine the offender's status of continued incarceration under the sentence imposed by the sentencing court.

{¶ 10} Within this framework, the question becomes how an offender would challenge the constitutional validity, a facial challenge of the sentencing structure, outside of the direct appeal. The state does not hazard a guess as to how an offender

could appeal the ODRC's decision to invoke the remaining portion of the offender's maximum term under R.C. 2967.271. Under division (E) of that statutory section, the ODRC conducts the hearings required to determine the offender's status under his non-life indefinite sentence under the same notice procedures outlined under R.C. 2967.12 dealing with parole eligibility.

{¶ 11} Traditionally in Ohio, there is no right to appeal release determinations by the ODRC under R.C. 2967.12. *Ridenour v. Randle*, 96 Ohio St.3d 90, 2002-Ohio-3606, 771 N.E.2d 859, ¶ 8. Since R.C. 2967.271(E) expressly adopts the procedures of R.C. 2967.12, it is logical to conclude that the release determination under R.C. 2967.271 will likewise not be directly appealable. More to the point, it has long been held that offenders cannot challenge the constitutionality of a sentencing provision as being facially suspect, especially that of parole, through a writ of habeas corpus. *Rodgers v. Capots*, 67 Ohio St.3d 435, 436, 619 N.E.2d 685 (1993), citing *Stahl v. Shoemaker*, 50 Ohio St.2d 351, 354, 364 N.E.2d 286 (1977). According to the Ohio Supreme Court, another remedy must be used, but there are no remedies available to an offender to challenge the constitutionality of the Reagan Tokes sentencing law during the offender's service of the prison term. *Stahl* at 354. This is especially concerning because the sentencing court does not possess continuing jurisdiction to review the sentence imposed in the final sentencing entry, nor would the appellate court be able to review that in the first instance outside of a direct appeal. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776.

{¶ 12} Since determinations of release are not directly appealable and the constitutional validity of a sentence cannot be raised in a writ, the only option is to file a motion with the sentencing court. If relief is sought in the original trial court, this particular inquiry will not be about the constitutionality of any provision of the Reagan Tokes Law or the apparent error in imposing a sentence beyond the maximum permitted by law; it will end up being about whether a trial court possesses or lacks continuing jurisdiction after entering the final entry of conviction in a criminal case. *See, e.g., State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 38-39 (trial court lacked jurisdiction to consider the defendant's claim as being either a petition for postconviction relief or a motion for a new trial under Crim.R. 33, and without another basis to secure the trial court's jurisdiction, the motion must be denied).

{¶ 13} Once a court of competent jurisdiction renders a final sentence in a criminal action, that court's continuing jurisdiction to act in postconviction proceedings is limited. *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 23, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. There must be a jurisdictional basis for the trial court to act or to decide the constitutionality of the sentencing statute. *Apanovitch* at ¶ 38-39; *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 1. *Parker* declared, for example and albeit through a fractured opinion, that the constitutional challenges did not render a sentence void such that the trial court maintains continuing jurisdiction to consider challenges to the sentencing structure

during the offender's continued incarceration. *Id.* (only one justice would have concluded that the trial court had inherent, continuing jurisdiction to correct the sentence based on the constitutional validity of a statute; the remaining justices in one form or another concluded that the trial court's jurisdiction depended on a rule or statute).

{¶ 14} A defendant can invoke the trial court's continuing jurisdiction following the issuance of a final sentencing entry in several ways, for example, through (1) filing a motion to correct a void judgment under *Zaleski*; (2) filing a timely or successive petition for postconviction relief under R.C. 2953.21; (3) filing a motion for a new trial under Crim.R. 33; or (4) filing a post-sentence motion to withdraw a plea under Crim.R. 32.1. Because the trial court's jurisdiction to consider postconviction motions or petitions is limited, the initial inquiry is whether the trial court may invoke its continuing jurisdiction to consider the particular postconviction motion filed. If the motion does not demonstrate that the sentence is void, that it is a timely petition for postconviction relief or motion for new trial, or if it is not properly considered as a post-sentence motion to withdraw a plea, the trial court simply lacks jurisdiction to consider the merits of the motion filed following the final entry of conviction. *See, e.g.*, *Apanovitch*; *Parker*.

{¶ 15} It is entirely unclear how the offender could challenge the constitutional basis of the Reagan Tokes sentencing provisions while he is serving the imposed term of imprisonment. The trial court does not maintain continuing jurisdiction over the final entry of conviction in general terms, and there are limited

options to collaterally challenge a sentence during the continued term of incarceration.

{¶ 16} If the trial court lacks continuing jurisdiction to consider the constitutional validity of the sentence imposed in the final entry of conviction, the appellate court will be unable to address the merits of the constitutional question asked because appellate review is limited to reviewing whether the trial court properly assessed its jurisdiction. *Id.* A court cannot create its own jurisdiction because it has only "such jurisdiction as may be provided by law." Ohio Constitution, Article IV, Section 3(B)(2). If we were to declare this issue not ripe for review, we would essentially be concluding that somehow, in some form, a court will have jurisdiction to review the constitutional validity of the sentence imposed at a later juncture. Tellingly, the state has not presented a single source of authority for the proposition that any court would maintain continuing jurisdiction over the constitutional validity of the sentence imposed upon Gamble during his service of the term of imprisonment or that another mechanism exists in which the constitutional claim could be preserved at a later date. The state simply presumes the existence of some mechanism. When framed in this context, the impediments to delayed review through the invocation of the ripeness doctrine become clearer.

{¶ 17} We acknowledge that other districts have concluded that this issue will not be ripe for review until the ODRC actually overcomes the presumption against serving the maximum sentence. In *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, for example, the Fifth District analogized the

indefinite, non-life sentencing scheme to Ohio's "bad time" law under former R.C. 2967.11, which provided the executive branch the power to keep a prisoner in jail beyond the sentence imposed by the trial court but could be challenged through a writ of habeas corpus after the additional sentence was imposed. *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000) ("*Bray*"). Understandably, that provision was deemed to violate the separation-of-powers doctrine because it divested the sentencing court of its authority to impose the final sentence — the ODRC was imposing a sentence beyond that which was authorized by the trial court. *Id.* Of note, the offender asserted his constitutional rights deprived by the "bad time" provision through a writ based on the fact that the trial court had not imposed the "bad time" prison sentence and the only mechanism to challenge a sentence that is not imposed by the trial court is through a separate proceeding when the statutory procedure is invoked by the executive branch. *Id.* The fact that the sentencing court did not sentence the offender to the additional prison term also necessarily meant that application of the "bad time" provision could not be challenged until actually imposed, which occurred through the writ ultimately accepted by the Ohio Supreme Court for reviewing the constitutional validity of the statute.

{¶ 18} Any application of *Bray* to the indefinite, non-life felony sentencing scheme under the Reagan Tokes Law is misplaced. Under R.C. 2929.144, the trial court imposes the maximum term in the final entry of conviction subject to the ODRC's decision to release the offender at the expiration of the minimum term, similar to the executive agency's authority to release an offender on parole under

R.C. 2929.02, for which the constitutional validity of the imposed sentence can be immediately appealed. *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803, ¶ 22.

{¶ 19} Under the Reagan Tokes Law sentencing scheme, the trial court sentences the offender to the minimum and maximum terms, and that sentence must be included in the final entry of conviction. R.C. 2929.14; 2929.144. The Reagan Tokes Law establishes a presumptive release date at the end of the minimum term imposed. R.C. 2967.271(B). This sentencing scheme shares nothing in common with the "bad time" provision, in which an offender could be kept in prison beyond the judicially imposed sentence upon an additional sentence being imposed by the executive branch based on conduct that occurred while the offender was serving the term of imprisonment imposed by the trial court.

{¶ 20} In order to determine whether an issue is ripe for judicial review, "the court must weigh (1) the likelihood that the alleged future harm will ever occur, (2) the likelihood that delayed review will cause hardship to the parties, and (3) whether the factual record is sufficiently developed to provide fair adjudication." *Stewart v. Stewart*, 134 Ohio App.3d 556, 558, 731 N.E.2d 743 (4th Dist.1999), citing *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921, (1998). In consideration of those factors, the only one that arguably weighs against finding Gamble's claims to be ripe is the likelihood of future harm occurring. The delayed review of Gamble's case will, practically speaking, prevent him from being offered any relief if there is no viable option to advance the constitutional claims against the sentencing structure implicated by his final sentence while Gamble is

serving his sentence.  Further, the record is sufficiently developed to address the matter on the merits.  Nothing prevents us from resolving the constitutional validity of the sentencing statutes underlying Gamble's final sentence now.  On this point, it has been argued that *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171 ("*McCann*"), supports the notion of divesting Gamble of the right to an immediate review of the constitutional validity of the sentence imposed.

{¶ 21}  *McCann*, however, has no bearing on this ripeness determination.  In *McCann*, similar to *Bray*, the defendant argued that the parole board's exercise of discretion to impose a period of postrelease control, following the defendant's having served his sentence, violated the separation-of-powers doctrine.  *Id.*  In that case, it was concluded that the constitutionality of the period of postrelease control was not ripe for review because the discretionary period of postrelease control was not imposed at the time of the defendant's appeal.  *Id.* at ¶ 6.  *McCann* is, quite simply, inapplicable — similar to the issues presented in *Bray* that was only reviewed in separate writ action after the "bad time" statutory provision was invoked by the executive agency.  Thus, under *McCann* and *Bray,* an offender cannot appeal that which has yet to be imposed.  In this case, the maximum sentence that Gamble is challenging was actually imposed by the trial court in the final entry of conviction. Gamble has already been impacted through the imposition of the sentence he challenges.

{¶ 22} Further, and as it has been recognized, if the period of postrelease control is imposed in the final entry of conviction, it must be challenged in the direct

appeal or is forever barred. *State v. Shepherd*, 8th Dist. Cuyahoga No. 109496, 2021-Ohio-507, ¶ 3. In that case, it was concluded the offender must appeal the imposition of postrelease control in the direct appeal or is forever barred under Ohio's return to the traditional distinction between void and voidable. *Id.,* citing *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 42. In *Harper* and *Henderson*, 161 Ohio St.3d 285. 2020-Ohio-4784, 162 N.E.3d 176, the Ohio Supreme Court held that "sentences based on an error, including sentences in which a trial court fails to impose a statutorily mandated term, are voidable if the court imposing the sentence has jurisdiction over the case and the defendant." *Henderson* at ¶ 1. If the sentencing error rendered the defendant's sentence voidable, the error cannot be corrected through a postconviction proceeding or through another form of collateral attack. *Henderson* at ¶ 43. Before the combination of *Harper* and *Henderson*, a sentence imposed in violation of law was considered void and subject to collateral attack in postconviction proceedings.

**{¶ 23}** In this case, Gamble is challenging the constitutional validity of the statutory structure under which his final sentence was imposed. *McCann* is necessarily limited to the facts of that case, in which the postrelease control was not imposed in the final entry of conviction and thus could not be challenged until the period was actually imposed. Further, the procedural mechanism in *McCann* and *Bray* are limited to challenging the imposition of sanctions beyond that which is imposed in the final entry of conviction. In *Shepherd* this distinction was recognized, and *Shepherd* is more analogous to the current situation in which the

maximum term of imprisonment, which Gamble claims violates his constitutional rights, was imposed in the final entry of conviction. To claim that *McCann* controls would be a conclusion that creates a conflict with *Shepherd.*

{¶ 24} This is not to say, however, that all aspects of the Reagan Tokes Law sentencing provisions are capable of being challenged in the direct appeal. The above analysis is limited to the fact that Gamble is challenging the statutory law that resulted in the imposition of a non-life, indefinite sentence in the final entry of conviction. We must be careful to distinguish the constitutional challenges to the judicial imposition of a given sentence, which must be raised in the direct appeal, with constitutional challenges to the execution of the sentence as carried out by the ODRC. The latter scenario is akin to *McCann* and *Bray*, and we agree with the dissent that any challenges as to the executive branch's enforcement of the judicially imposed sentence are not ripe for review in a direct appeal.

{¶ 25} Recently, the ODRC has published its policy governing the maximum term hearing established by R.C. 2967.271. ODRC Policy 105-PBD-15, available at https://drc.ohio.gov/policies/parole-board (last visited Mar. 26, 2021). This policy's stated purpose is to govern and provide for the due process rights a prisoner sentenced to a non-life, indefinite term are afforded under the legislature's delegation of authority to the ODRC under R.C. 5120.01 to establish policies or rules in carrying out its statutory obligation. The appropriate mechanism to challenge the constitutional validity of the established policies, rules, or regulations established by the executive branch to fulfill its obligations created by the legislature, is through a

separate declaratory judgment or habeas action seeking to preclude the ODRC from enforcing its rules. *See, e.g., O'Neal v. State*, 2020-Ohio-506, 146 N.E.3d 605, ¶ 3 (10th Dist.); *Kellogg v. Shoemaker*, 46 F.3d 503 (6th Cir.1995); *Rodriguez v. United States Parole Comm.*, 594 F.2d 170, 173 (7th Cir.1979); *State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 15, fn. 3. Any claims of the deprivation of due process rights with respect to the maximum term hearing process itself are not ripe for review in this direct appeal. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 220, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (reviewing the Rev. Stat. 1979, 42 U.S.C. 1983 action to determine the constitutional validity of the procedural rules established by the ODRC's statutorily authorized rulemaking authority).

{¶ 26} On this point, the state appears to be confusing the general challenges to the imposition of a sentence with the ripeness of the due process claims based on the executive branch's execution of the judicially imposed sentence. *Kepling* (noting the state's ripeness claim is "in effect" targeting a declaratory judgment action under R.C. Chapter 2721 that is not ripe for review in a direct appeal). Gamble is not claiming that the ODRC's policy, established through the delegation of authority from the legislature, violates his constitutional rights (not surprising in light of the fact that the policy had not been enacted at the time of this appeal.)

{¶ 27} In this case, however, the trial court imposed a maximum term of three years and a minimum term of two years — it is not relevant that an offender may be released at the end of the minimum term, no more than would we consider the possibility of judicial release under R.C. 2929.20, if applicable, as depriving the

defendant of the right to challenge the imposition of his sentence in a direct appeal since the offender may be released, rendering any challenges to the length of the sentence irrelevant. Further, an offender does not need to wait until parole is denied in order to challenge the constitutional validity of the indefinite sentencing structure. *Patrick*, Slip Opinion No. 2020-Ohio-6803, at ¶ 22. Unlike in *McCann*, Gamble has been sentenced to the provision of law he now claims is unconstitutional. *Id., see generally Shepherd*. That there is a presumption to release the offender after completion of the minimum term does not alter the immutable fact that the trial court has imposed the maximum sentence of three years. The conclusion from *McCann* cannot be applied in light of the stark procedural postures of both situations — the former in which the challenged sanction had yet to be imposed contrasted with the current situation in which the sentence has been imposed.

{¶ 28} We continue to adhere to the conclusion reached in *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578 (finding the constitutional challenges to the sentences imposed under R.C. 2929.144 and 2929.14(A)(1)(a) and (A)(2)(a) to be ripe for review in the direct appeal of the sentence imposed), that challenges to the constitutionality of the Reagan Tokes Law's sentencing provisions are ripe for review in the direct appeal of the sentence imposed. *Id.* Nevertheless, we agree with the state that Gamble has failed to demonstrate that his sentence is in violation of constitutional norms.

**The Reagan Tokes Law Is Not Unconstitutional**

{¶ 29} In this appeal, Gamble asks us to conclude that the "Reagan Tokes Act is unconstitutional," premised on the belief that R.C. 2967.271, the source of the ODRC's authority to conduct the parole-like hearings over indefinite sentences under R.C. 2929.144, violates the separation-of-powers doctrine and his right to a jury trial under the Sixth Amendment.

{¶ 30} The Reagan Tokes Law provisions under R.C. 2929.144 and 2967.271, as previously discussed, largely mirror those from R.C. 2929.02 and 2967.12. Both create a system of releasing offenders serving indefinite sentences. The Reagan Tokes Law, unlike the indefinite life sentencing structure under R.C. 2967.16 (final release from indefinite sentence statutory section, which requires the executive agency to determine the release on parole and then the final release from the prison sentence imposed by the trial court in separate stages), creates a presumption of a final release after the minimum term, subject to any applicable term of postrelease control. R.C. 2967.271(C). Therefore, Gamble's request for us to declare the Reagan Tokes Law unconstitutional in its entirety, including the indefinite sentencing scheme codified under R.C. 2967.271, 2929.144, and 2929.14(A)(1)-(2), necessarily presents constitutional implications for indefinite life sentences under Ohio law that cannot be ignored in light of the fact that the executive branch makes parole decisions affecting the judicially imposed sentences.

{¶ 31} The legislature has the sole authority to define crimes and establish the punishment in Ohio. *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887

N.E.2d 328, ¶ 13, quoting *Stewart v. Maxwell*, 174 Ohio St. 180, 181, 187 N.E.2d 888 (1963); *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 2. If the legislature returns Ohio to indefinite sentencing for certain felony offenses, or even increases sentencing ranges, that is well within its legislative prerogative, for only the Ohio electorate can decide the General Assembly's fate for such a policy decision. The General Assembly has determined that for any qualifying offense, as defined under R.C. 2929.144(A), the trial court must impose both a minimum and a maximum term of imprisonment. R.C. 2929.144(C); 2929.14(A)(1)(a) and (A)(2)(a).

{¶ 32} Gamble's conclusion that the Reagan Tokes Law is unconstitutional appears to be entirely based on his perception of the impact of the legislative determination, not any specific provision of the law that violates a constitutional principle. In other words, according to Gamble, the Reagan Tokes Law permits the ODRC to make unilateral sentencing decisions in violation of the separation-of-powers doctrine and in violation of his right to a jury trial under the Sixth Amendment because the ODRC controls the release determination under R.C. 2967.271. The statutes enacted under the Reagan Tokes Law do neither. R.C. 2929.144 requires that the trial court impose the maximum term of imprisonment, and under R.C. 2967.271, the ODRC is merely required to implement or execute that imposed sentence.

{¶ 33} Gamble first analogizes the Reagan Tokes indefinite, non-life sentencing scheme to Ohio's "bad time" law under former R.C. 2967.11, which

provided the executive branch the power to keep a prisoner in jail beyond the sentence imposed by the trial court. *Bray*, 89 Ohio St.3d 132, 729 N.E.2d 359. Understandably, that "bad time" provision was deemed to violate the separation-of-powers doctrine because it divested the sentencing court of its authority to impose the final sentence — the executive branch was tasked with imposing a sentence beyond that which was imposed by the trial court in the final entry of conviction if the offender's misconduct while serving the sentence imposed warranted the action. *Id.* Any application of *Bray* to the indefinite, non-life felony sentencing scheme is misplaced. Under R.C. 2929.144, the trial court imposes the maximum term in the final entry of conviction such that the ODRC is merely tasked with implementation of the imposed sentence. *Bray* is not relevant to the current discussion.

{¶ 34} "A fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is 'the ultimate arbiter of public policy.'" *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. It is the legislature, not the judiciary, that possesses "the power to continually create and refine the laws to meet the needs of the citizens of Ohio." *Id.* "All statutes have a strong presumption of constitutionality." *Id.* at ¶ 25. In order to find that a statute is unconstitutional, courts must determine "'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *Id.*, quoting *State ex rel.*

*Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Further, all doubts regarding the constitutionality of any given statute are resolved in favor of the statute. *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, ¶ 5, quoting *State v. Gill*, 63 Ohio St.3d 53, 55, 548 N.E.2d 1200 (1992).

{¶ 35} Under the Reagan Tokes Law, enacted through the codification of various statutes throughout Title 29, the trial court sentences the offender to the minimum and maximum term, and that sentence must be included in the final entry of conviction. R.C. 2929.14; 2929.144. Thus, it is the judicial branch that imposes the statutorily required sentence; the only sentencing discretion provided to the trial court lies with the length of the minimum term under R.C. 2929.14(A)(1)(a) and (A)(2)(a). R.C. 2967.271 establishes a presumptive release date at the end of the minimum term and provides the ODRC the framework required to enforce the maximum sentence imposed by the trial court in the final entry of conviction. That codified process does not alter the fact that the trial court imposed a maximum term as calculated under R.C. 2929.144. R.C. 2967.271(B). The ODRC may rebut that presumption and enforce the remaining portion of the offender's prison term (the maximum term) already imposed by the trial court. R.C. 2967.271(D)(1) (authorizing the ODRC to "maintain" the sentence already imposed). This is similar to a sentencing court's imposition of an indefinite life sentence that delegates authority to the executive branch to make any and all parole determinations. R.C. 2967.12; 2967.16.

{¶ 36} It is important to remember that the separation-of-powers doctrine as derived from the federal Constitution "has no express provision which prohibits the officials of one branch of government from exercising functions of the other branches." *Geraghty v. United States Parole Comm.*, 719 F.2d 1199, 1210 (3d Cir.1983), citing *Springer v. Philippine Islands*, 277 U.S. 189, 201, 48 S.Ct. 480, 72 L.Ed. 845 (1928) (upholding parole determinations by the executive branch). "The Constitution does not require three airtight departments of government." *Id.*, citing *Nixon v. Admr. of Gen. Servs.*, 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). "Ohio, unlike other jurisdictions, [also lacks] a constitutional provision specifying the concept of separation of powers." *State v. Warner*, 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18 (1990), citing *State v. Harmon*, 31 Ohio St. 250 (1877), and *State, ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464 (1929). Similar to the federal Constitution, Ohio's separation-of-powers doctrine "is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *Id.* There is no explicit rule prohibiting the delegation of authority as between the co-equal branches of government. *Id.*

{¶ 37} Thus, Gamble's claims are premised on the common misconception that the ODRC is "extending" the prison sentence when, in fact, the final sentence imposed by the trial court includes both the maximum term, in this case three years, and the presumptive possibility of release after two years. R.C. 2929.144(C). The Reagan Tokes sentencing scheme shares nothing in common with the "bad time"

provision in which an offender could be kept in prison beyond the judicially imposed sentence, which undoubtedly violates the separation-of-powers doctrine whether considered under the state or federal law. Under the sentencing scheme established by the Reagan Tokes Law, the judiciary imposes the sentence that is enforced by the ODRC — in complete compliance with the separation-of-powers doctrine. *Bray*, 89 Ohio St.3d at 136, 2000-Ohio-116, 729 N.E.2d 359, citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 648, 4 N.E. 81 (1885) (concluding that "[t]he determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary.").

{¶ 38} Further, it has long been held that "'when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence.'" *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 23; *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19; *Woods v. Telb*, 89 Ohio St.3d 504, 512-513, 2000-Ohio-171, 733 N.E.2d 1103; *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578. As has been recognized,

> A court imposes both the minimum and maximum prison terms, including both in its sentence. The [O]DRC then determines whether the offender merits more than the minimum and up to the maximum imposed. In terms of the separation of powers, the delegation of power to the [O]DRC is like the system of post-release control: "Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full

sentence and the [ODRC] determines whether violations merit its imposition."

*Wilburn* at ¶ 26*,* quoting *Ferguson* at ¶ 23 and *Woods* at 511.

{¶ 39} The Reagan Tokes Law does not violate any constitutional safeguard because the executive branch has always possessed the authority to determine parole or sentencing release matters under an indefinite sentencing scheme after the trial court imposes the minimum and maximum terms. *See* R.C. 2967.12 and 2967.16 (executive branch authorized to grant final release of the offender following adherence to the terms of parole). R.C. 2929.144, 2929.14(A)(1)(a) and (A)(2)(a), and R.C. 2967.271 do not stray from the sentencing structure already in place under Ohio law.

{¶ 40} Keeping an offender in prison under R.C. 2929.144 past the minimum term is no different than keeping an offender in prison under an indefinite life sentence after the offender becomes eligible for parole. The executive branch's decision releasing an offender from or retaining an offender in an indefinite sentence has been part of the Ohio criminal justice system from time immemorial. *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334 (1964) (discussing the parole board's unilateral authority to release an offender from the maximum indefinite sentence). According to the Ohio Supreme Court, "the granting and revocation of parole are matters traditionally handled by administrative officers." *Woods* at 514. The indefinite sentencing scheme enacted under the Reagan Tokes

Law does not violate the separation-of-powers doctrine under either Ohio or federal law.

{¶ 41} Further, there can be no violation of the right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because the trial court is statutorily required to impose the minimum and maximum terms under R.C. 2929.144 upon the offender being found guilty of the qualifying felony offense — similar to an offender being sentenced to life with the possibility of parole under the indefinite life sentencing structure. The trial court lacks discretion to impose any term beyond the maximum under any provision of the Reagan Tokes Law — similar to the trial court's authority to impose sentences within ranges under R.C. 2929.14. In *Apprendi*, the Supreme Court held that, in order to sentence a defendant to a term of imprisonment in excess of the statutory maximum, the factual circumstances justifying the enhanced sentence must be found by the jury beyond a reasonable doubt. That conclusion is simply irrelevant to Ohio's sentencing law in general that contains no provision permitting a sentencing court to impose a sentence beyond the maximum set forth in the sentencing statutes, much less is that concern relevant to the newly enacted sections under the Reagan Tokes Law: R.C. 2929.144 or 2929.14(A)(1)(a) and (A)(2)(a).

{¶ 42} Gamble also cites *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, in which it was concluded that Ohio's sentencing structure of permitting the trial court to impose a sentence beyond the minimum based on the

issuance of findings violated *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Foster* was superseded by *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), as recognized in *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 35. In *Ice*, the Supreme Court concluded that a state court's discretion to impose consecutive sentences did not violate the right to a jury trial under the Sixth Amendment because throughout history the jury played no role in that sentencing decision. *Ice* at 167-168. The sole limitation was that a trial court cannot impose a sentence "beyond the maximum" provided by law based on consideration and determination of facts not considered by the jury. *Id.* at 167. "Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures[,]" even those prerogatives that in effect lengthen the offender's sentence. *Id.* at 168.

{¶ 43} Gamble seems to claim that any consideration of facts not determined by the trier of fact violates *Apprendi*. There is no basis for that conclusion under Ohio or federal law. In fact, Ohio's sentencing structure in general depends on judicial consideration of facts beyond that which is considered by the trier of fact in rendering a decision of guilt. R.C. 2929.11; 2929.12; 2929.14 (providing for a sentencing range upon nonqualifying felony offenses). Under Gamble's rationale, Ohio would be returned to the pre-*Oregon v. Ice* days in which any and all sentencing considerations violate the offender's constitutional rights and such a conclusion would necessarily impact Ohio's complete sentencing structure that relies on judicial determinations to sentence within ranges.

{¶ 44} Nevertheless, under R.C. 2929.144(C), the trial court is required to sentence the offender to the maximum term upon the trier of fact's finding of guilt. There is no discretion exercised by the trial court in imposing the maximum term, which is determined through a simple formula, and nothing within any provision codified under the Reagan Tokes Law permits any branch of government to impose a sentence beyond the maximum term as defined under R.C. 2929.144. R.C. 2929.144 is in complete compliance with *Foster* and *Apprendi*.

{¶ 45} The only discretion lies with imposition of the minimum term of imprisonment under R.C. 2929.14, which is in accordance with Ohio's sentencing structure for every nonqualifying felony offense in which the trial court determines the final sentence within the prescribed sentencing range upon consideration of factors not considered by the trier of fact. The maximum sentence is solely determined from a mathematical formula. R.C. 2929.144(B). Upon calculating the maximum term of imprisonment, the trial court then must impose that maximum term as part of the offender's sentence. R.C. 2929.144(C). The only difference is the indefinite nature of the sentence, similar to pre-S.B. 2 sentencing laws that provided an indefinite term between two ranges. Neither R.C. 2929.144 nor 2929.14(A)(1)(a) and (A)(2)(a) runs afoul of *Apprendi*.

{¶ 46} We cannot help but note that offenders should tread lightly in this area. Gamble's claim that R.C. 2967.271 violates the Constitution would necessarily invoke the severability doctrine, for which the constitutionally infirm provision is severed from the statutory scheme as a whole. R.C. 1.50 unambiguously states that

if any section of the Revised Code, or a provision therein, is determined to be invalid, "the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

{¶ 47} Solely for the sake of discussion, if Gamble is correct and R.C. 2967.271 is declared invalid, that conclusion does not impact R.C. 2929.144 that requires the trial court to sentence him to the maximum term. Importantly, Gamble has not directly claimed that R.C. 2929.144 and the imposition of indefinite sentences under that section and R.C. 2929.14(A)(1)(a) and (A)(2)(a) are likewise invalid. How could he when indefinite sentencing structures have been part of Ohio sentencing law for decades at the least? The impact on Gamble would be immeasurable. Declaring R.C. 2967.271 constitutionally invalid would subject Gamble to the indefinite sentencing range of two years minimum, up to the maximum of three years under R.C. 2929.144 without the benefit of the presumption of release after serving the minimum term. *See, e.g., Foster* (leaving the sentencing ranges while severing the judicial fact-finding requirement). That cannot be the Pyrrhic victory Gamble is envisioning.

{¶ 48} And even if we declared the whole of the act unconstitutional, nothing stops the legislature from reinstating the minimum and maximum terms without providing for the presumption of release. *Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, at ¶ 13, quoting *Maxwell*, 174 Ohio St. at 181, 187 N.E.2d 888 (it is solely in the province of the legislature to define punishments for crimes).

Thus, the judicial intervention being requested here could very well lead to increased sentences for all offenders. It is for this reason that any policy considerations of the length of sentences is best left for the legislature and any judicial intervention should not be taken lightly. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 21 (all statutes are presumed to be constitutional).

{¶ 49} And finally, Gamble claims that R.C. 2967.271 provides no due process protections because it is silent as to the hearing provided thereunder. As previously mentioned, R.C. 2967.271(E) expressly provides that the notice of the hearing necessary to resolving the offender's release status is conducted under the provisions of R.C. 2967.12, Ohio's parole hearing structure for indefinite life sentences.

{¶ 50} When a state "creates a liberty interest, the Due Process Clause requires fair procedures for its vindication" so only then "courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). "'Requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole.'" *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 30, quoting *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 17. As has been long held, "the required due process procedures [for parole proceedings] are minimal. Specifically, the court has found that a prisoner subject to parole receives adequate due process when he is allowed an opportunity to be heard and is provided a statement of the reasons why parole was denied." *Id.*, citing

*Swarthout* at 220, and *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Constitutional safeguards require nothing further. *Id.*

{¶ 51} R.C. 2967.271(C)(1) also expressly provides the offender notice of what conduct shall constitute grounds for the invocation of the maximum term of imprisonment imposed by the trial court. Under that provision, the ODRC may enforce the maximum term of imprisonment imposed by the trial court if

> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

*Id.* To conclude that offenders lack notice of what is required or that R.C. 2967.271 lacks the establishment of due process safeguards necessarily ignores the unambiguous statutory language. That the legislature omitted an exhaustive list of infractions that constitute grounds for denying the offender's release after serving the minimum term should no more impact the constitutional considerations than the vagaries of that parole determination as it relates to indefinite life sentences under R.C. 2967.12. And regardless, ODRC Policy 105-PBD-15, in fact, details those violations for non-life indefinite sentences and the procedures for addressing those

violations on presumptive release.  ODRC Policy 105-PBD-15, Section F, available at https://drc.ohio.gov/policies/parole-board (last visited Mar. 26, 2021); *Cleveland Metro. Bar Assn. v. Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, ¶ 42 (citing ODRC policy).  Any challenges with respect to the constitutional validity of the policy established governing the maximum term hearing is well beyond the scope of our current review.

{¶ 52} It suffices that Gamble's arguments as to the constitutional validity of "the Reagan Tokes Act" are without merit.  Although the facial constitutional challenges are ripe for review, we overrule Gamble's argument that the Reagan Tokes Law is unconstitutional.  We affirm.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MARY J. BOYLE, A.J., DISSENTS WITH SEPARATE OPINION

MARY J. BOYLE, A.J., DISSENTING:

{¶ 53} Respectfully, I must dissent because I believe the state is correct that the issues raised by Gamble are not yet ripe.

{¶ 54} In concluding that the constitutional challenges raised by Gamble are ripe, the majority states that it "continue[s] to adhere to *Wilburn*"; however, *Wilburn* did not address *McCann.* The majority asserts that *McCann* has no bearing on the ripeness determination because *McCann* involved a discretionary period of postrelease control which had not yet been imposed whereas the instant appeal involves a maximum sentence that has already been imposed. However, the majority is conflating the imposition of the maximum sentence by the court and the actual execution thereof.

{¶ 55} The relevance of *McCann* cannot be discounted, and we are obligated to follow the authority of this court. Several of our sister courts have relied upon *McCann* in determining that challenges to sentencing under the Reagan Tokes Law are not ripe for review until a defendant has been held past his or her minimum sentence. *See, e.g., State v. Halfhill*, 4th Dist. Meigs No. 20CA7, 2021-Ohio-177, ¶ 20; *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227; *State v. Manion*, 5th Dist. Tuscarawas No. AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631; *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702.[2]

---

[2] There are currently two cases pending before the Supreme Court of Ohio dealing with the question of ripeness, to wit: *State v. Maddox*, Case No. 2020-1266 ("Is the constitutionality of the provisions of the Reagan Tokes Act, which allow the Department

{¶ 56} In *McCann*, the defendant argued that because the parole board had the power under R.C. 2967.28 to extend his sentence by up to an additional five years for violation of postrelease control, the statute was unconstitutional. We concluded that because the defendant in *McCann* was not currently the subject of such action by the parole board, the issue was not yet ripe for review. *Id.* at ¶ 6.

{¶ 57} The cases cited by the majority in support of a finding of ripeness, *Shepherd*, *Harper*, and *Henderson*, involve issues with the sentence imposed and the obligation to raise any errors in such imposition at the direct appeal. But Gamble's claimed constitutional violations do not arise from the *imposition* of the sentence in this matter. As acknowledged by the majority, Gamble was properly sentenced to both a minimum and maximum term under the statute. Gamble's claimed constitutional violations relate solely to the process by which the ODRC may make the determination of whether to keep him beyond the minimum sentence and trigger the maximum sentence.

{¶ 58} The majority readily admits that the ODRC "simply enforces the sentence imposed and has been delegated the responsibility over the release determinations under R.C. 2967.271." This correct assertion underscores the fact that Gamble's challenge is not ripe, because he does not contest the imposition or

of Rehabilitation and Corrections [sic] to administratively extend a criminal defendant's prison term beyond the presumptive minimum term, ripe for review on direct appeal from sentencing, or only after the defendant has served the minimum term and been subject to extension by application of the Act?"); and *State v. Downard*, Case No. 2020-1232 (are challenges to the Reagan Tokes Law ripe for review on direct appeal?).

validity of his sentence but, rather, the *potential* execution of the maximum sentence.

{¶ 59} Both Gamble and the defendant in *McCann* raised issues with the *process* that extended, or would extend, their sentence. In *McCann*, it was argued that the postrelease control statute violated his right to a jury trial by allowing the parole board to extend his sentence. Gamble's argument is in the same vein — it is the ODRC that will decide whether Gamble must serve the maximum sentence rather than only the minimum sentence, and it is the process through which this determination is made by the ODRC that he claims is unconstitutional.

{¶ 60} The ODRC is permitted to rebut the presumption of his minimum sentence and keep Gamble in prison for an additional period not to exceed the maximum term imposed by the sentencing judge. R.C. 2967.271(C). The statute provides that the presumption may be rebutted if the ODRC determines at a hearing any of the following:

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.
>
> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶ 61} At this stage, it is impossible for us to know whether any of the above conditions will occur and rebut the presumption of the minimum sentence. Thus, Gamble is not currently subject to any action by the ODRC related to extending his sentence, and he may very well never be. This is the very epitome of a failure to demonstrate ripeness.

{¶ 62} "[C]onstitutional questions are not ripe for review until the necessity for a decision arises on the record before the court." *State v. Spikes*, 129 Ohio App.3d 142, 147, 717 N.E.2d 386 (11th Dist.1998), citing *Christensen v. Bd. of Commrs. on Grievances & Discipline*, 61 Ohio St.3d 534, 535, 575 N.E.2d 790 (1991). While the majority posits that criminal defendants will have no other way to challenge the provisions raised herein and assert that a habeas corpus petition is not a viable option, it is unclear why the majority believes this to be the case. As noted by the Fourth District:

> [A] petition for a writ of habeas corpus was the procedure by which the defendants in *Bray* challenged the constitutionality of the "bad time" statute, R.C. 2967.11. The defendants were sentenced, served their prison terms, and then were sanctioned with bad time penalties that were added to the maximum sentence imposed by the trial court. Each defendant filed a petition for a writ of habeas corpus, alleging that they were unlawfully restrained because R.C. 2967.11 was unconstitutional. Similarly, in *Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103, an inmate, Woods, challenged the post-release control

statute, R.C. 2967.28, on the grounds that it violated the separation of powers doctrine and due process. Woods was sentenced to ten months in prison and then placed on post-release control for three years. After a number of violations, Woods was sanctioned to serve one hundred and eighty days in a community based correctional facility. Woods filed a petition for a writ of habeas corpus arguing that the post-release control statute was unconstitutional. The Supreme Court of Ohio held that the post-release control statute was constitutional. As in *Bray,* the Court did not specifically discuss the necessity of the use of a petition for a writ of habeas corpus to challenge the constitutionality of the post-release control statute, the Court ruled on the merits, finding the statute constitutional. Thus, as with *Bray* and as recognized by the Fifth District in *Downard* and *Minion*, we find that a habeas corpus petition is the appropriate method for Ramey to challenge the constitutionality of the Reagan Tokes Law when — if ever — the ODRC holds him beyond the minimum sentence.

*State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 21.

{¶ 63} Thus, contrary to the majority's assertion, none of the three factors used to determine ripeness weighs in favor of Gamble's claims. First, the likelihood of harm occurring is completely unknown at this time. It is possible that none of the conditions in R.C. 2967.271(C) will occur, and there may never be a question as to whether Gamble's sentence would be extended beyond the minimum term. At this time, there is only the *potential* for Gamble to be subjected to the maximum prison term. "Generally, a claim is not ripe if the claim rests upon 'future events that may not occur as anticipated, or may not occur at all.'" *McLaughlin v. McLaughlin*, 4th Dist. Athens No. 06CA14, 2007-Ohio-260, ¶ 12, quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). Moreover, while a party is not required to await the consummation of threatened injury to obtain preventive

relief, the injury must be "'certainly impending.'" *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 581-582, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923).

{¶ 64} In addition, the factual record is not sufficiently developed for us to provide fair adjudication. Because Gamble has not been subject to any determination by the ODRC, there is nothing in the record that would allow us to assess whether the process of such determination violates his constitutional rights. Finally, as noted above, Gamble has a vehicle within which to challenge the ODRC's determination process should it actually occur — a petition for habeas corpus.

{¶ 65} Accordingly, I believe this matter is not ripe, and it would be premature for us to address the constitutional challenges raised in Gamble's appeal. I respectfully dissent.