[Cite as *State v. Grays*, 2023-Ohio-221.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,               :

                                                            No. 111600

    v.                                     :

KATRON GRAYS,                                     :

    Defendant-Appellant.              :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:**  January 26, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-663463-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Carl M. Felice, Assistant Prosecuting
Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet and Eric M. Levy, *for
appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Katron Grays ("Grays"), appeals from his

convictions and sentence.  He raises the following assignments of error for review:

1. The trial court erred when it found Grays's plea was voluntary, knowing, and intelligent and that he was aware of the maximum penalty involved where at the time of his change of plea he was given inaccurate information about prison reduction where the trial court imposed a mandatory prison sentence.

2. Grays's indefinite sentence imposed under the Reagan Tokes sentencing scheme violates Grays's rights under the United States Constitution applied to the state of Ohio through the Fourteenth Amendment and the Ohio constitutions as it denies Grays due process of law; violates the Sixth Amendment right to a jury trial; violates the separation of powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction.

3. Grays's sentence is contrary to law where the trial court failed to comply with the required notices contained in R.C. 2929.19(B)(2)(c) when imposing sentence.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for the trial court to make the necessary advisements under R.C. 2929.19(B)(2)(c).

## I. Factual and Procedural History

{¶ 3} On October 15, 2021, Grays was named in a four-count indictment, charging him with aggravated-vehicular assault in violation of R.C. 2903.08(A)(1)(a), with a furthermore clause that Grays was driving with a suspended license (Count 1); aggravated-vehicular assault in violation of R.C. 2903.08(A)(2)(b), with a furthermore clause that Grays was driving with a suspended license (Count 2); driving while under the influence in violation of R.C. 4511.19(A)(1)(a) (Count 3); and driving while under the influence in violation of R.C. 4511.19(A)(1)(a), with a furthermore clause that Grays was previously convicted of

or pleaded guilty to one violation of R.C. 4511.19(A) or (B) or an equivalent offense (Count 4).

{¶ 4} On March 15, 2022, Grays withdrew his previously entered pleas of not guilty and expressed his desire to accept the terms of a negotiated plea agreement with the state. At the conclusion of a Crim.R. 11 plea colloquy, Grays pleaded guilty to aggravated-vehicular assault as charged in Count 1 of the indictment, a felony of the second degree, and driving while under the influence as charged in Count 3 of the indictment, a misdemeanor of the first degree. In exchange for his guilty pleas, the remaining counts were nolled. Satisfied that the guilty pleas were knowingly, voluntarily, and intelligently made, the trial court accepted Grays's pleas and referred him to the county probation department for a presentence-investigation report.

{¶ 5} At sentencing, the trial court imposed an indefinite prison term of 8 to 12 years on Count 1 in accordance with the Reagan Tokes Law (enacted through S.B. 201). Grays was also sentenced to six months in jail on Count 3, to run concurrently with the sentence imposed on Count 1.

{¶ 6} Grays now appeals from his convictions and sentence.

## II. Law and Analysis

### A. Crim.R. 11

{¶ 7} In the first assignment of error, Grays argues his guilty pleas were not knowingly, voluntarily, and intelligently made because the trial court inaccurately advised him that he was entitled to good-time credit on a mandatory, minimum

prison term. Grays contends that "by misstating the law and advising [him] that his mandatory prison sentence could be reduced, [he] was prejudiced and improperly induced into entering a guilty plea due to the inaccurate statement of law made by the trial court." Grays suggests that but for the good-time credit advisement, he would not have pleaded guilty.

{¶ 8} "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11. Crim.R. 11(C)(2) provides that when accepting a guilty or no-contest plea in a felony case, the trial court must personally address the defendant and

> (a) Determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Inform[ ] the defendant of and determin[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Inform[ ] the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 9} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13.

"The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant must establish prejudice "'on the face of the record'" and not solely by virtue of challenging a plea on appeal. *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 10} The traditional rule is subject to two limited exceptions. *Id.* at ¶ 14-16. Under these two exceptions, no showing of prejudice is required (1) when a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, and (2) when a trial court has completely failed to comply with a portion of Crim.R. 11(C). *Id.* at ¶ 14-15, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *Nero* at 108.

{¶ 11} When reviewing a trial court's compliance with Crim.R. 11, the inquiry no longer focuses on strict, substantial, or partial compliance with the rule. *State v. Kauffman*, 2021-Ohio-1584, 170 N.E.3d 952, ¶ 12 (8th Dist.). Rather, *Dangler* instructs reviewing courts to engage in the following inquiry:

(1) has the trial court complied with the relevant provision of the rule?
(2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of

demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286 at ¶ 17.

{¶ 12} In this case, there is no dispute that the trial court properly explained the constitutional rights Grays would be waiving by pleading guilty. Crim.R. 11(C)(2)(c). The record further reflects that Grays understood the effect of his plea of guilty, and that the court, upon acceptance of the plea, could proceed with judgment and sentence. Crim.R. 11(C)(2)(b). Accordingly, the issue before this court concerns the adequacy of the trial court's compliance with Crim.R. 11(C)(2)(a).

{¶ 13} As stated, Grays pleaded guilty to aggravated-vehicular assault in violation of R.C. 2903.08(A)(1)(a) and driving while under the influence in violation of R.C. 4511.19(A)(1)(a) (Count 3). Relevant to this appeal, the sentencing range applicable to the aggravated-vehicular-assault offense is governed by R.C. 2903.08(D). The statute provides, in relevant part:

> (1) The court shall impose a mandatory prison term, as described in division (D)(4) of this section, on an offender who is convicted of or pleads guilty to a violation of division (A)(1) of this section.
>
> * * *
>
> (4) A mandatory prison term required under division (D)(1) or (2) of this section shall be a definite term from the range of prison terms provided in division (A)(2)(b) of section 2929.14 of the Revised Code for a felony of the second degree * * * except that if the violation is a felony of the second degree committed on or after the effective date of this amendment, *the court shall impose as the minimum prison term for the offense a mandatory prison term that is one of the minimum terms prescribed for a felony of the second degree in division (A)(2)(a) of section 2929.14 of the Revised Code.*

(Emphasis added.)  R.C. 2903.08(D)(1) and (4).  In this case, Grays was alleged to have committed the aggravated-vehicular-assault offense on or about September 19, 2021 — well after the amendment to R.C. 2903.08(D)(1), effective March 22, 2019. Accordingly, Grays was subject to an indefinite prison term that carried a mandatory term of imprisonment on the minimum portion of the sentence.

{¶ 14} In turn, R.C. 2929.14(A)(2)(a) provides that:

> For a felony of the second degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

*Id.*

{¶ 15} A review of the record establishes that the trial court advised Grays of the maximum penalties associated with the second-degree felony offense of aggravated-vehicular assault and the first-degree misdemeanor offense of driving while under the influence.  Relevant to the arguments posed in this case, the trial court advised Grays that he was subject to a mandatory prison term on his second-degree felony offense and could be sentenced to a maximum prison term of 8 to 12 years.  The trial court then explained to Grays his postrelease-control obligations and the implications of the indefinite sentencing scheme enacted by the Reagan

Tokes Law. During the Reagan Tokes advisement, the trial court explained that the law establishes a presumption that Grays will be released at the end of the minimum term imposed. However, the court advised Grays that the Ohio Department of Rehabilitation and Correction (the "ODRC") "has the legal right under Senate Bill 201 to rebut that presumption and extend [his] period of confinement for 50 percent of the [minimum] term imposed." (Tr. 7.) Finally, the court notified Grays that he may reduce his minimum prison term under certain circumstances, stating:

> Further, you may earn a reduction on the minimum term in increments of five to 15 percent if you demonstrate exceptional conduct or adjustment to incarceration.

(Tr. 8.)

{¶ 16} On appeal, Grays suggests the trial court's advisement concerning his eligibility for "good-time credit" was made pursuant to R.C. 2967.193. The statute, which governs Ohio's earned-credit programs, provides opportunities for inmates to earn credit towards the satisfaction of his or her prison term for participation in certain programs, including "an education program, vocational training, employment in prison industries, treatment for substance abuse, or any other constructive program" of the prison in which he or she is incarcerated. R.C. 2967.193(A)(1). Pursuant to R.C. 2967.193(C), however, "[n]o person confined in a state correctional institution * * * shall be awarded any days of credit under division (A) of this section [if] [t]he person is serving a prison term that section 2929.13 * * * of the Revised Code specifies cannot be reduced pursuant to this section."

{¶ 17} In this case, Grays correctly states, and the state concedes, that the provisions for earned credit under R.C. 2967.193 are not applicable to him because the minimum portion of his indefinite sentence carried a mandatory term of imprisonment. *See* R.C. 2929.13(F)(4). *See also* R.C. 2903.08(D)(1) and (4); and R.C. 2967.193(A)(2) and (C)(1). Thus, Grays contends "the trial court failed to substantially comply with its duty to inform [him] of the maximum penalty involved" by misstating the law regarding "his eligibility for good-time credit under R.C. 2967.193." He further suggests that he was prejudiced by the court's misstatement of law, as "[t]he misinformation led [him] to enter a plea of guilty." *See State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15 ("[I]f a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently, but the defendant must demonstrate prejudice resulting from the erroneous representation, i.e., that but for erroneous information, the plea would not have been made.").

{¶ 18} After careful review of the plea colloquy, however, we find the trial court's advisement, which was made during the court's discussion of the Reagan Tokes Law, concerned R.C. 2967.271. The statute, titled "Non-life Felony Indefinite Prison Terms," sets forth, among other things, the circumstances that would permit a trial court to reduce the minimum prison term for an offender who is serving a nonlife felony indefinite prison term. *See* R.C. 2967.271(F)(1)-(8). Here, the trial court's advisement concerning Grays's eligibility for a reduction in his minimum

prison term used specific terms and phrases that are expressly included in R.C. 2967.271, such as "exceptional conduct" and "adjustment to incarceration." *See* R.C. 2967.271(F)(1). These terms are not consistent with the language used in R.C. 2967.193. Accordingly, Grays's characterization of the disputed advisement is not supported by the record. As such, we find Grays's arguments concerning R.C. 2967.193 to be inapplicable, and therefore, without merit.[1]

{¶ 19} With that said, we note that Grays has acknowledged the relevance of R.C. 2967.271 within his brief on appeal. In this regard, Grays has maintained that if the trial court's advisement did, in fact, constitute an advisement under the Reagan Tokes Law, this court must interpret R.C. 2967.271 to determine if the statute allows him to earn a reduction on his mandatory prison sentence. Grays explains his alternative position as follows:

> Grays recognizes that under R.C. 2967.271 the Reagan Tokes Act which changed Ohio's sentencing scheme under S.B. 201 for felonies of the first and second degree did authorize an earned reduction of the

[1] In *State v. Bobo,* 8th Dist. Cuyahoga No. 111362, 2022-Ohio-3555, this court was presented with a similar challenge to the trial court's advisement to the defendant at the time of his plea that "he would be entitled to earn good-time credit and could reduce his term by 15 percent." *Id*. at ¶ 4. As in this case, the defendant in *Bobo* argued that his plea was not knowingly made "where the court informed him, incorrectly, that he was entitled to good-time credit on a mandatory prison term." *Id*. at ¶ 7. Upon review of the record, this court determined that the court's advisement concerning the defendant's eligibility for a reduction in his prison term was made pursuant to R.C. 2967.193. *Id*. at ¶ 18. Accordingly, this court found that the court's advisement constituted a misstatement of law and that "the trial court erred when it advised [defendant] that he could earn credit for good behavior to reduce his mandatory prison term pursuant to R.C. 2967.193." *Id*. at ¶ 24. Nevertheless, this court found the defendant was not entitled to have his plea vacated because he could not establish that he was prejudiced by the trial court's error.

After careful consideration, we diverge from the analysis set forth in *Bobo* to the extent it interpreted an identical plea-advisement as an explanation of eligibility under R.C. 2967.193. As previously discussed, the language used in the analogous advisements more accurately reflect the Reagan Tokes provisions set forth under R.C. 2967.271.

minimum prison term with a presumptive earned early release date. If said law is applicable to mandatory prison sentences permitting a reduction of the mandatory term then Grays's instant assignment of error might be moot where the trial court would have accurately advised him of the reduction. The crux of the issues that this court must decide is if the sentencing reduction contemplated in R.C. 2967.271 is applicable to mandatory sentences. This legal holding is necessary to determine if the trial court accurately advised Grays of the law prior to accepting his guilty plea and, as such, if the plea was knowingly, intelligently, and voluntarily made.

(Grays's brief p. 6.)

**{¶ 20}** Thus, in reviewing whether Grays's plea was knowingly, voluntarily, and intelligently made, we must first determine whether Grays was eligible for "earned reduction of [his] minimum prison term" (hereinafter referred to as "ERMPT") under R.C. 2967.271 in order to effectively assess whether the trial court's advisement during the Crim.R. 11 colloquy constituted a misstatement of law. If Grays is eligible for a reduction of his sentence under R.C. 2967.271, then the trial court correctly advised him of the law, and the first assignment of error is meritless. If not, then the trial court partially complied with Crim.R. 11(C)(2)(a) by advising Grays of the maximum penalties associated with his offenses, and Grays must establish that he was prejudiced by the error. *See Bobo*, 8th Dist. Cuyahoga No. 111362, 2022-Ohio-3555, at ¶ 20.

> The question before the court is a question of statutory interpretation. De novo review applies to questions of statutory interpretation. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. A court's main objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 1995-Ohio-172, 647 N.E.2d 486 (1995). "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did

enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply the statute as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18, citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11.

*State v. Jones*, Slip Opinion No. 2022-Ohio-4485, ¶ 24.

{¶ 21} The Reagan Tokes Law, effective as of March 22, 2019, implemented a system of indefinite sentencing for nonlife felonies of the first- and second-degree committed on or after the effective date. R.C. 2901.011. Pursuant to the Reagan Tokes Law, a sentencing court imposing a prison term under R.C. 2929.14(A)(1)(a) or (A)(2)(a) is required to order a minimum prison term under that provision and a maximum prison term as determined by R.C. 2929.144(B). The Reagan Tokes Law establishes a "presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term[2] or on the offender's presumptive earned early release date,[3] whichever is earlier." R.C. 2967.271(B). However, the ODRC may rebut that presumption and keep the offender in prison for an additional period not to exceed the maximum term

---

[2] "'Offender's minimum prison term' means the minimum prison term imposed on an offender under a non-life felony indefinite prison term, diminished as provided in section 2967.191 or 2967.193 of the Revised Code or in any other provision of the Revised Code, other than division (F) of this section, that provides for diminution or reduction of an offender's sentence." R.C. 2967.271(A)(1).

[3] "'Offender's presumptive earned early release date' means the date that is determined under the procedures described in division (F) of this section by the reduction, if any, of an offender's minimum prison term by the sentencing court and the crediting of that reduction toward the satisfaction of the minimum term." R.C. 2967.271(A)(2).

imposed by the sentencing judge, depending on the inmate's behavior in prison. R.C. 2967.271(C).

{¶ 22} As briefly mentioned above, the Reagan Tokes Law also authorizes the trial court to approve ERMPT for "exceptional conduct while incarcerated or the offender's adjustment to incarceration." R.C. 2967.271(F)(1). As noted by the trial court at the time of Grays's plea in this case, the length of the reduction is limited to a range of 5 to 15 percent based on the level of the offense for which the prison term was imposed. R.C. 2967.271(F)(7)(b). Pursuant to R.C. 2967.271(F)(8), however, the statute's ERMPT provisions

> do not apply with respect to an offender serving a non-life felony indefinite prison term for a sexually oriented offense, and no offender serving such a prison term for a sexually oriented offense is eligible to be recommended for or granted, or may be recommended for or granted, a reduction under those divisions in the offender's minimum prison term imposed under that non-life felony indefinite prison term.

*Id.* Interpreting R.C. 2967.271(F)(8), Ohio Courts have stated that "eligibility for [ERMPT] is [therefore] limited to offenders serving non-life, indefinite prison terms, who are not serving prison terms for sexually oriented offenses." *State v. Dirocco*, 7th Dist. Mahoning Nos. 21 MA 0116 and 21 MA 0117, 2022-Ohio-3221, ¶ 7; *see also State v. Broughton*, 12th Dist. Clinton No. CA2020-09-011, 2021-Ohio-2987, ¶ 12.

{¶ 23} In this case, there is no dispute that the trial court was required to impose an indefinite prison sentence on Grays's second-degree felony offense pursuant to R.C. 2929.14(A)(2)(a). Thus, it is clear that the statutory framework set

forth under R.C. 2967.271 was applicable to Grays's aggravated-vehicular assault conviction. Grays is entitled to the presumptive release date described in R.C. 2967.271(B), subject to the circumstances contained in subsections (C) and (D) that would permit the ODRC to enforce or maintain the maximum prison term imposed pursuant to R.C. 2929.144(B).

{¶ 24} Moreover, when viewed in its entirety, R.C. 2967.271 does not contain any specific language to suggest Grays is not entitled to ERMPT under R.C. 2967.271(F)(1) despite the mandatory nature of his minimum prison term. The exception to eligibility for ERMPT is narrowly tailored and only excludes certain offenses that are not relevant to this case. *See* R.C. 2967.271(F)(8). In contrast to the unambiguous restrictions contained in R.C. 2967.193, the language used in R.C. 2967.271(F) does not reference mandatory prison terms or otherwise address the implications of R.C. 2929.13(F). *See* R.C. 2967.193(C)(1) ("No [inmate] * * * shall be awarded days of credit * * * [if] [t]he person is serving a prison term that [R.C.] 2929.13 * * * specifies cannot be reduced pursuant to this section or chapter[.]"). Because S.B. 201 is silent on whether a mandatory minimum term may be reduced pursuant to R.C. 2967.271, we view the narrowness of the exception set forth under division (F) to be intentional and telling. Accordingly, we are inclined to agree with Grays's suggestion that the trial court's advisement concerning his eligibility for a reduction in his minimum prison term for "exceptional conduct or adjustment to incarceration" is consistent with the plain language of R.C. 2967.271 and the Reagan Tokes Law.

{¶ 25} Nevertheless, our interpretation of the plain language contained in R.C. 2967.271 does not end our inquiry. Because Grays was subject to a mandatory prison term, we find it is necessary to consider the implications of R.C. 2929.13(F) given the breadth of the exclusory language used therein.

{¶ 26} R.C. 2929.13(F) addresses mandatory prison terms and prohibits a sentencing court from reducing the term of a sentence it imposes for certain crimes. For instance, and as previously discussed, the plain language of R.C. 2929.13(F) restricts Grays's eligibility for earned credit under R.C. 2967.193 given the nature of his felony conviction. The statute states, in pertinent part:

> (F) Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under * * * section 2929.14 * * * of the Revised Code and except as specifically provided in section 2929.20, divisions (C) to (I) of section 2967.19, or section 2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code *shall not reduce the term or terms pursuant to * * * section 2967.193, or any other provision of Chapter 2967 * * * for any of the following offenses:*
>
> * * *
>
> (4) A felony violation of section * * * 2903.08 * * *of the Revised Code if the section requires the imposition of a prison term[.]

(Emphasis added.) R.C. 2929.13(F)(4).

{¶ 27} Here, the plain language of R.C. 2929.13(F) requires the sentencing court to impose a prison term for certain serious offenses and limits that court's discretion to reduce that term pursuant to R.C. 2929.20 (judicial release); R.C. 2967.193 (earned credit); *or any other provision of R.C. Chapter 2967*, except in certain enumerated circumstances that are not applicable to this case. *See State v.*

*Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, 880 N.E.2d 896, ¶ 16.  Thus, while it is clear that R.C. 2929.13(F)(4) unambiguously states that Grays is not eligible for judicial release or earned credit due to the mandatory nature of his minimum prison term, the statute's reference to "any other provision of Chapter 2967" also suggests that Grays's minimum prison term cannot be reduced by any provision contained within Chapter 2967, including the ERMPT provision contained in R.C. 2967.271(F).

{¶ 28} Under the foregoing circumstances, we find the broad exclusory language contained in R.C. 2929.13(F) conflicts or is otherwise inconsistent with the carefully constructed exception contained in R.C. 2967.271(F)(8).  As stated, R.C. 2929.13(F) expressly prohibits Grays from reducing his minimum prison term under the Reagan Tokes Law, while R.C. 2967.271, a substantial component of the Reagan Tokes Law, expressly grants Grays access to ERMPT on the same felony offense.

{¶ 29} "'It is a well-settled principle of statutory construction that when an irreconcilable conflict exists between two statutes that address the same subject matter, one general and the other special, the special provision prevails as an exception to the general statute.'" *State v. Pribble*, 158 Ohio St.3d 490, 2019-Ohio-4808, 145 N.E.3d 259, ¶ 13, quoting *State v. Conyers*, 87 Ohio St.3d 246, 248, 719 N.E.2d 535 (1999).  R.C. 1.51, the statutory version of this general/specific canon, recognizes that optimally, conflicting statutes should be construed "so that effect is given to both" but provides that

> [i]f the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

*Id.* As explained by the Ohio Supreme Court,

> The rationale behind the general/specific canon is that "'the particular provision is established upon a nearer and more exact view of the subject than the general, of which it may be regarded as a correction.' Or think of it this way: the specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence."

*Pribble* at ¶ 13, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 183 (2012), quoting Jeremy Bentham, *General View of a Complete Code of Laws*, reprinted in 3 The Works of Jeremy Bentham, 210 (John Bowring Ed.1843).

{¶ 30} Applying the foregoing to the competing statutes, we are unable to construe R.C. 2929.13(F)(4) and R.C. 2967.271(F)(1)-(8) in a way that gives effect to both statutes. To do so would greatly increase the number of offenders who are not eligible for ERMPT under the Reagan Tokes Law due to the broad language of R.C. 2929.13(F). Moreover, regardless of whether this court were to construe R.C. 2967.271 as the more specific or general provision, we find the Reagan Tokes Law prevails in this matter. Here, the Reagan Tokes Law, including the construction of R.C. 2967.271, was enacted later than R.C. 2929.13. Although there have been recent amendments to various portions of R.C. 2929.13, which was originally enacted in July 1996, the provision governing Grays's felony offense in this case, R.C.

2929.13(F)(4), has remained substantially similar for more than a decade.[4] *See* R.C. 1.54 ("A statute which is * * * amended is intended to be a continuation of the prior statute and not a new enactment, so far as it is the same as the prior statute."). Accordingly, we construe R.C. 2967.271, which implemented significant changes to the sentencing structure for nonlife, first- and second-degree felony offenses as being enacted later in time.

{¶ 31} Similarly, even if this court were to deem R.C. 2967.271 the more general statute, we find the statute more accurately comports with the General Assembly's manifest intent to "return to an incentive-based, rehabilitative prison process for serious offenders." *State v. Delvallie,* 2022-Ohio-470, 185 N.E.3d 536, ¶ 6 (8th Dist.). As articulated by this court, the Reagan Tokes Law, which "represents the Ohio legislature's first major departure from the so-called 'truth in sentencing law,' enacted through S.B. 2 in 1996":

> incentivize[s] socially acceptable conduct by offering inmates a tangible way to reduce their overall sentences through buying into the social contract — a tacit agreement to live together in accordance to the socially established rules of behavior. * * * The Reagan Tokes Law offers inmates the opportunity to demonstrate their willingness to reform and, in the process, to receive lesser sentences based on their behavior, instead of serving definite terms. *Reagan Tokes case spurs Ohio legislation to change incarceration guidelines.* * * * These changes provide the inmate the opportunity to reduce the overall prison term below what would be served under the pre-S.B. 201 definite sentencing structure. *Id.* Under the pre-S.B. 201 definite sentencing law, Ohio focused on the punitive nature of the

___

[4] R.C. 2929.13(F) was adopted as a part of the comprehensive changes enacted by Am.Sub.S.B. 2. One of the objectives of that legislation was "truth in sentencing," which sought to require prisoners to serve the full time to which they were sentenced, or at least to avoid their early release for certain reasons. *See State v. Day*, 2d Dist. Montgomery No. 16902, 1998 Ohio App. LEXIS 5351, 3 (Oct. 2, 1998).

imprisonment system. The Reagan Tokes Law offers an albeit small, but beginning, step away from that draconian approach.

*Id*. at ¶ 1 and 6. Thus, the Reagan Tokes Law, including the provisions governing an offender's ability to reduce his or her minimum prison term by 5 to 15 percent, reflects the General Assembly's manifest intent "to return Ohio to its core sentencing approach, implementing the reformative incentive for offenders that was lost to the definite sentencing structure." *Id*. at ¶ 12. Given the breadth of felony offenses listed under R.C. 2929.13(F), we find it would be contrary to the intent of the General Assembly to prohibit a sentencing court from reducing a prison term pursuant to "any other provision of Chapter 2967" for the first- or second-degree felony offenses listed in R.C. 2929.13(F)(1)-(22) that would otherwise qualify for ERMPT under the Reagan Tokes Law. *See* R.C. 2967.271(F)(8).

{¶ 32} Based on the foregoing, we find "the incentive-based, rehabilitative prison process" implemented under the Reagan Tokes Law applies to Grays's second-degree felony offense in this case. Because the exception set forth under R.C. 2967.271(F)(8) does not apply to Grays, the newly constructed sentencing structure provides him the ability to earn a reduction in his minimum prison term if he demonstrates exceptional conduct while incarcerated or an adjustment to incarceration. R.C. 2967.271(F)(1). Accordingly, we find the trial court correctly advised Grays at the time of his plea hearing that he was eligible for such a reduction based on the nature of his offense. We therefore find no merit to Grays's position that his plea was not knowingly, intelligently, or voluntarily made due to a perceived

error in the court's discussion of the nonconstitutional rights Grays would be waiving by entering pleas of guilty.

{¶ 33} The first assignment of error is overruled.

## B. The Reagan Tokes Law

{¶ 34} In the second assignment of error, Grays argues the trial court erred by imposing an indefinite sentence pursuant to the Reagan Tokes Law. He contends the Reagan Tokes Law is unconstitutional because it violates his right to a trial by jury, the separation-of-powers doctrine, and his right to due process[5] under the Ohio and United States Constitutions. Grays alternatively suggests that trial counsel rendered ineffective assistance of counsel by failing to object to the constitutionality of the indefinite sentence.

{¶ 35} Consistent with the well-establish precedent of this court, we find no merit to the constitutional challenges raised within this assigned error. The question of whether the Reagan Tokes Law is constitutional was decided in this court's en banc opinion in *Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).

---

[5] In this case, Grays's due process argument asserts that R.C. 2967.271 "lacks legislative provisions for a meaningful hearing to prevent depravation of [his liberty] interest without due process of law." We note, however, that Grays further contends that the ODRC's internal policies "are not law" and "do not provide notice and fair warning to the ordinary citizen of what behavior might violate the statute/law." Thus, appellant concludes that R.C. 2967.271 is "void-for-vagueness which is not corrected by the internal policies of ODRC." Grays's void-for-vagueness argument is not unique and has been previously rejected by this court. *See e.g., State v. Gettings*, 8th Dist. Cuyahoga No. 111176, 2022-Ohio-2691, ¶ 6; *State v. Peterson,* 8th Dist. Cuyahoga No. 109306, 2022-Ohio-835, ¶ 8-9. This is because the void-for-vagueness argument amounts to a due process challenge to the procedural safeguards afforded under R.C. 2967.271, which was expressly considered and overruled in *Delvallie. See Delvallie* at ¶ 82-88.

There, this court found "that the Reagan Tokes Law, as defined under R.C. 2901.011, is not unconstitutional," and reaffirmed the principles established in *State v. Gamble*, 2021-Ohio-1810, 173 N.E.3d 132 (8th Dist.); *State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728 (8th Dist.); and *State v. Wilburn*, 2021-Ohio-578, 168 N.E.3d 873 (8th Dist.). *See Delvallie* at ¶ 17. Because Grays does not advance any novel argument left unaddressed by the *Delvallie* decision, we find the constitutional challenges presented in this appeal are without merit.

{¶ 36} Moreover, we are unable to conclude that trial counsel rendered ineffective assistance of counsel by failing to challenge the constitutionality of Grays's prison term at the time of sentencing.

{¶ 37} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment to the United States Constitution guarantees a defendant the effective assistance of counsel at all "critical stages" of a criminal proceeding, including sentencing. *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 7 ("sentencing is a critical stage in which a felony offender has a right to counsel"), citing *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, ¶ 15, and *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

{¶ 38} As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable

representation; and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *Strickland* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶ 39} As stated, this court has routinely rejected the constitutional challenges to the Reagan Tokes Law that are presented in this appeal. *Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.). Therefore, even if trial counsel had challenged the constitutional validity of Grays's indefinite prison term, the objection would have proven to be unsuccessful. Under these circumstances, Grays cannot establish the requisite level of prejudice to warrant a finding of ineffective assistance of counsel. *See State v. Waters*, 8th Dist. Cuyahoga No. 110821, 2022-Ohio-2667, ¶ 45; *see also State v. Debose*, 8th Dist. Cuyahoga No. 109531, 2022-Ohio-837, ¶ 26 ("The failure to perform a futile act does not constitute ineffective assistance of counsel."), citing *State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 95; *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 37 ("[T]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial.").

{¶ 40} The second assignment of error is overruled.

## C. Reagan Tokes Notifications

{¶ 41} In the third assignment of error, Grays argues his sentence is contrary to law because the trial court failed to comply with the notice requirements of R.C. 2929.19(B)(2)(c) at the time of sentencing.

{¶ 42} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either (1) the record does not support the sentencing court's findings under certain statutes, or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 43} Pursuant to R.C. 2929.19(B)(2)(c), trial courts are required to provide certain notifications if a nonlife felony indefinite prison term is imposed. The statute provides, in pertinent part:

> [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
>
> * * *
>
> (c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:
>
> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 44} "No specific language is required, but the court must impart this information to a defendant at the time of sentencing." *State v. Gates*, 8th Dist. Cuyahoga No. 110615, 2022-Ohio-1666, ¶ 21. "When trial courts have failed to provide the notifications required by R.C. 2929.19(B)(2)(c), this court has remanded cases for the limited purpose of providing the required notifications." *State v. Bradley*, 8th Dist. Cuyahoga No. 110882, 2022-Ohio-2954, ¶ 13, citing *Gates* at ¶ 25; and *State v. Guzman*, 8th Dist. Cuyahoga No. 111153, 2022-Ohio-2414, ¶ 10; *see also Bobo*, 8th Dist. Cuyahoga No. 111362, 2022-Ohio-3555, at ¶ 33.

{¶ 45} In this case, the trial court made the following statement at the time of sentencing:

Reagan Tokes does apply to this case. So the minimum sentence in this matter is eight [years], and the maximum sentence is 12 years. There is a presumption that you are released after eight years; however, the ODRC has the legal right under Senate Bill 201 to rebut that presumption and to extend your period of confinement for 50 percent of the term I have imposed.

If ODRC makes that decision, you will be released after the additional time is served. The decision to extend your term in this county is the sole authority of the ODRC, and they alone made the determination based on such criteria as your conduct while incarcerated, your rehabilitation, the threat they believe you pose to the community, whether any restrictive housing sanctions were imposed on you during your incarceration, as well as your security classification.

(Tr. 30-31.)

{¶ 46} After careful review of the sentencing colloquy in its entirety, we find the trial court partially complied with the requirements of R.C. 2929.19(B)(2)(c). Here, the trial court unambiguously advised Grays that there is a presumption that he will be released from prison once he serves his minimum prison term, but that the presumption is rebuttable if the ODRC determines that the factors listed under R.C. 2929.19(B)(2)(c)(ii) are applicable. With that said, however, the record further demonstrates that the court failed to advise Grays that a hearing would be held before the ODRC could maintain his incarceration beyond the minimum stated term, and that he could be evaluated by the ODRC more than once during his confinement. In addition, the trial court did not specifically advise Grays that if he has not been released prior to the expiration of the maximum prison term imposed as part of his sentence, he must be released upon the expiration of that term.

{¶ 47} Based on the foregoing, we find the trial court failed to fully comply with the requirements of R.C. 2929.19(B)(2)(c). In accordance with foregoing

precedent of this court, this case is remanded to the trial court for the sole purpose of providing Grays with each of the notifications required by R.C. 2929.19(B)(2)(c). The third assignment of error is sustained.

{¶ 48} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR

N.B. Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie* and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.

Judge Lisa B. Forbes is constrained to apply *Delvallie*. For a full explanation, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Forbes, J., dissenting).