[Cite as *State v. Clouser*, 2025-Ohio-834.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                     No. 114094

    v.                                   :

DAVID CLOUSER,                           :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 13, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-686387-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James D. May, Assistant Prosecuting Attorney, *for appellee*.

Wegman Hessler Valore and Matthew O. Williams, *for appellant*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, David Clouser ("Clouser"), appeals his convictions and sentence. He claims the following errors:

> 1. Appellant's plea was not knowingly, voluntarily, and intelligently entered.

2. The trial court's imposition of a consecutive sentence is not supported by the record.

3. The trial court committed reversible error prejudicing appellant when it imposed an unconstitutional sentence upon appellant pursuant to the "Reagan Tokes Law," which is unconstitutional on its face.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Clouser was charged in a 21-count indictment with six counts of identity theft, one count of aggravated possession of drugs, two counts of grand theft, one count of attempted grand theft, three counts of falsification in a theft offense, two counts of fraudulent actions concerning a vehicle identification number ("VIN"), two counts of improper use of certificate of title, one count of tampering with evidence, one count of telecommunications fraud, and two counts of money laundering. The charges included firearm and forfeiture specifications.

{¶ 4} At a plea hearing on April 24, 2024, Clouser pleaded guilty to one count of identity fraud in violation of R.C. 2913.49(B)(2), a felony of the second degree; one count of drug possession in violation of R.C. 2925.11(A), a felony of the fifth degree; two counts of grand theft in violation of R.C. 2913.02(A)(3), a felony of the fourth degree; one count of attempted grand theft in violation of R.C. 2923.02 and 2913.02(A)(3), a felony of the fifth degree; one count of falsification in violation of R.C. 2921.13(A)(9), a felony of the fourth degree; two count of fraudulent actions concerning VINs, violations of R.C. 4549.62(D)(1), felonies of the fifth degree; one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; and one count of additional money-laundering prohibitions in

violation of R.C. 1315.55(A)(1), a felony of the third degree. Many of the charges carried forfeiture specifications resulting in the forfeiture of any interest in the items involved in the alleged offenses, including guns, ammunition, and vehicles. At the conclusion of the plea hearing, the judge who accepted Clouser's guilty pleas on behalf of the assigned judge stated that a sentencing hearing was scheduled for May 22, 2024, before the assigned judge.

{¶ 5} At the sentencing hearing on May 22, 2024, the court sentenced Clouser to an indefinite sentence of six to nine years on his identity-fraud conviction in Count 1. The court imposed nine-month sentences on Clouser's drug-possession, attempted-theft, grand-theft, and fraudulent-actions-concerning-VIN convictions set forth in Counts 7-10, 13, and 15. The court also sentenced Clouser to 30 months on his tampering-with-evidence and money-laundering convictions set forth in Counts 18 and 20.

{¶ 6} The court ordered the sentences imposed on Counts 7-10, 13, and 15 to run concurrently to each other and to Count 1. The court also ordered that the 30-month sentences on Counts 18 and 20 run concurrently to each other but consecutively to the indefinite prison term imposed on Count 1. Clouser now appeals his convictions and sentence.

## II. Law and Analysis

### A. Guilty Pleas

{¶ 7} In the first assignment of error, Clouser argues the trial court erred in accepting his guilty pleas. He contends his guilty pleas were not knowingly,

intelligently, and voluntarily made because the court failed to inform him that it could proceed immediately to sentencing after the court accepted his guilty pleas.

{¶ 8} A defendant's guilty plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). Crim.R. 11(C) requires the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Poage*, 2022-Ohio-467, ¶ 9 (8th Dist.), citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). As an appellate court, we review the trial court's adherence to Crim.R. 11(C) de novo and consider the totality of the circumstances to determine whether the trial court complied with the rule at the plea hearing. *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.).

{¶ 9} Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea to a felony offense without first addressing the defendant personally and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 10} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *State v. Dangler*, 2020-Ohio-2765, ¶ 13, citing *State v. Perry*, 2004-Ohio-297, ¶ 14-15, and *State v. Stewart*, 51 Ohio St.2d 86, 93 (1977); Crim.R. 52. A limited exception exists when the trial court fails to explain the constitutional rights waived by the defendant when pleading guilty as outlined in Crim.R. 11(C)(2)(c). *Dangler* at ¶ 14, citing *State v. Clark*, 2008-Ohio-3748, ¶ 31, and *State v. Veney*, 2008-Ohio-5200, syllabus. A trial court's complete failure to comply with a portion of Crim.R. 11(C) also eliminates the defendant's burden to show prejudice. *Id.* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22.

{¶ 11} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *Nero*, 56 Ohio St. at 108. This includes instances where the trial court fails to fully cover the "nonconstitutional" aspects of

the plea colloquy. *Id.* at ¶ 14, citing *Veney* at ¶ 17 (distinguishing the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b) from the constitutional rights notifications required by Crim.R. 11(C)(2)(c)). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *Nero* at 108.

> [T]he questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

{¶ 12} Clouser argues he did not enter his guilty pleas knowingly, intelligently, and voluntarily because the trial court failed to inform him that it could proceed immediately to sentencing after accepting his guilty pleas. Crim.R. 11(C)(2)(b) states that the court must "[inform] the defendant of and [determine] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." The right to be informed that the court could proceed immediately to judgment and sentence is not a constitutional right. And because the court otherwise complied with the requirements of Crim.R. 11, Clouser must demonstrate that he was prejudiced by the court's failure to explain that it could proceed immediately to judgment and sentence. This he cannot do.

{¶ 13} At the plea hearing on April 24, 2024, the court informed Clouser before he entered any guilty pleas that the parties agreed sentencing would occur at a later date. The judge who took Clouser's pleas was substituting for the assigned judge, and he informed Clouser that the assigned judge would be available to sentence him on May 22, 2024. (Tr. 4-5.) It is undisputed that the trial court complied with Crim.R. 11 in all other respects, and the record is clear that Clouser understood the consequences of his guilty pleas. Although the court did not expressly state that it could, theoretically, proceed directly to judgment and sentence at the plea hearing, the court's statements regarding a later sentencing date indicated that sentencing was not going to occur at the time of the plea hearing. Therefore, the court's failure to advise Clouser that it could proceed directly to judgment and sentence at the time of the plea hearing had no bearing on Clouser's decision to plead guilty, and Clouser cannot demonstrate that he was prejudiced by the omission.

{¶ 14} The first assignment of error is overruled.

## B. Consecutive Sentences

{¶ 15} In the second assignment of error, Clouser argues the trial court's imposition of consecutive sentences is not supported by the record.

{¶ 16} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and

convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I) or (2) the sentence is "otherwise contrary to law."

{¶ 17} "In Ohio, sentences are presumed to run concurrent to one another unless the trial court makes the required findings under R.C. 2929.14(C)(4)." *State v. Gohagan*, 2019-Ohio-4070, ¶ 28 (8th Dist.). R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender; (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public; and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and

specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324 (1999).

{¶ 18} A reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.), quoting *Bonnell* at ¶ 37.

{¶ 19} In this case, the trial court made the following findings on the record while imposing consecutive sentences:

> I do find that consecutive sentences are necessary to punish you, and they are not disproportionate to the seriousness of your conduct and to the danger you pose to the public.
>
> Your criminal history simply demonstrates that consecutive sentences are necessary and this course of conduct. [sic] You got caught. Okay. Fine. Eat it. But no. You went that extra step to get ahold of your wife, drag her into your mess and have her go and start deleting stuff.
>
> Again, that level of sophistication, I will say, is impressive. I wouldn't know the first step on how to delete my information other than throw it in Lake Erie. I'm sure I could figure it out. That's not how I think.
>
> So I am going to run those two 30-month sentences consecutive to each other.

(Tr. 94-95.)

{¶ 20} Clouser does not dispute that the trial court made the findings required by R.C. 2929.14(C)(4). He argues instead that the trial court's findings are not supported by the record. However, before the consecutive sentences were

imposed, the prosecutor outlined Clouser's course of conduct and applied it to the factors set forth in R.C. 2929.14(C)(4). Referring to R.C. 2929.14(C)(4)(a), the prosecutor explained that Clouser "committed a whole lot of offenses because he was awaiting trial, and we had to reindict just to accommodate the new stuff." Referring to R.C. 2929.14(C)(4)(b), the prosecutor observed that

> at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so . . . unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

Regarding the multiple offenses, the prosecutor explained:

> We find these bank accounts and subpoena the records from the bank accounts, and there are checks going in and money is going out of the account, and then the checks are dishonored, because they're bogus, and it moves from account to account to account, and it moves all around. We can't even explain it.
>
> It's someone who is trying to hide the money but doing a weird job of it, because it's not even that much money, but it's compounding the problem because it's going into this account and same day it going into that account. It makes no sense whatsoever.
>
> So once again, we have these crimes, and you're kind of left going, what? And the best example of that, your Honor, is that Jeep, that original Jeep. We seized that Jeep a second time when it comes back from Michigan. We get a search warrant for that Jeep.
>
> It has one of those add-on customizable safes that bolted right into the floor. Inside that safe is the original paperwork for the Jeep before the VIN was flipped. What? Why not throw it in the trash? I don't know. This is one of the reasons the State was wondering about a psych eval. But it comes back. He's fine. He's just doing it.
>
> . . .
>
> The fact is, I don't see him stopping. I don't see that he has any reason to stop unless he can't[.]

(Tr. 78.)  The trial court also noted that Clouser had committed similar crimes as those involved in this case in other states.  (Tr. 93.)

{¶ 21} Finally, regarding the factor listed in R.C. 2929.14(C)(4)(c), involving a defendant's criminal history, the State informed the court:

> He can't not commit crime.  He can't not commit crime even after he's sentenced — I mean even after he's pled guilty.  What else is going on?  There's always other stuff going on, it seems like.  There's always the next thing to revert to.
>
> So it doesn't seem like he's a bad person, but he does bad things, a lot of them, at the expense of others, at the expense of his own family.
>
> He gave his dad one of those lawn mowers that he got from Ag-Pro.  That is a really nice thing to do.  Dad didn't know it was stolen.
>
> The only reason we found out about it is because he went down to see Dad.  The Detective went all the way into Pennsylvania, so the diligence of the Detective has exposed this crazy web of craziness that definitely has intent behind it and then misguided or paranoid weird stuff after that.
>
> . . .
>
> Those VINs — that motorcycle VIN was scraped out.  That Jeep, the first Jeep, the VIN was popped.  Okay.  So we went looking for the other VIN.  That VIN sticker, pulled.  Okay.  Well, guess what?  There are still more VINs hidden.  There's one hidden under the driver's seat under the carpet.  That was gone.  That means someone had to remove the driver's seat to pull the carpet to get that sticker, and yet, you leave the paperwork in the safe.  I don't know.
>
> He likes guns.  Is he dangerous?  I don't know.  He uses the same stolen identity information again to commit further crimes.

(Tr. 79-80.)  The prosecutor further stated that Clouser has a substance-abuse problem and a "life of crime problem."  (Tr. 82.)  In short, the prosecutor described Clouser as someone addicted to criminal behavior.  (Tr. 81-82.)

{¶ 22} The record clearly and convincingly shows that Clouser engaged in various courses of conduct that caused harm to many people including members of his own family. The scope of his criminal conduct was wide ranging and, considered in the aggregate, demonstrates that consecutive sentences are not disproportionate to the seriousness of his misconduct and that consecutive sentences are necessary to punish Clouser and to protect the public. The record also clearly and convincingly shows that Clouser committed several of these offenses while he was awaiting trial. Therefore, the trial court's findings are supported by the record.

{¶ 23} The second assignment of error is overruled.

### C. Reagan Tokes

{¶ 24} In the third assignment of error, Clouser argues the indefinite sentence imposed pursuant to the Reagan Tokes Law on the identity fraud conviction in Count 1 is unconstitutional. He contends the Reagan Tokes Law is facially unconstitutional because it violates his constitutional rights to due process and a jury trial, and because it violates the separation-of-powers doctrine.

{¶ 25} However, in *State v. Delvallie*, 2022-Ohio-470 (8th Dist.), we held that "the Reagan Tokes Law, as defined under R.C. 2901.011, is not unconstitutional," and reaffirmed the principles established in *State v. Gamble*, 2021-Ohio-1810 (8th Dist.); *State v. Simmons*, 2021-Ohio-939 (8th Dist.); and *State v. Wilburn*, 2021-Ohio-578 (8th Dist.). *See Delvallie* at ¶ 17. Because Clouser does not advance any novel argument left unaddressed by the *Delvallie* decision, we overrule this assignment of error.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)